Citation Nr: 1452663 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 11-21 791 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to service connection for a lung/respiratory disorder, to include pulmonary fibrosis (PF) and nonspecific interstitial pneumonia (IP). 

2. Entitlement to a total disability evaluation based upon individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

T. S. Kelly, Counsel 


INTRODUCTION

The Veteran, who is the appellant, had active service from September 1966 to October 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from December 2009 and July 2013 rating determinations of the Department of Veterans Affairs (VA) Regional Office (RO) located in Philadelphia, Pennsylvania. 

The Veteran, in September 2013, appeared at a videoconference hearing. A transcript of the hearing is of record.

In April 2014, the Board remanded this matter for further development.

The issue of entitlement to a TDIU is remanded to the RO via the Appeals Management Center (AMC) in Washington, DC. The Department of Veterans Affairs (VA) will notify the Veteran if further action is required on his part.


FINDING OF FACT

The most probative evidence of record shows that the Veteran's IP and PF are not related to service, including his claimed herbicide exposure,






CONCLUSION OF LAW

A lung disorder, to include IP and PF, was not incurred in or aggravated by active service nor may it be presumed to have been incurred therein. 38 U.S.C.A. §§ 1110, 1116 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION


Duties to Notify and Assist

The VCAA describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

Under 38 U.S.C.A. § 5102, VA first has a duty to provide an appropriate claim form, instructions for completing it, and notice of information necessary to complete the claim if it is incomplete. Second, under 38 U.S.C.A. § 5103(a), VA has a duty to notify the claimant of the information and evidence needed to substantiate and complete a claim, i.e., existence of a current disability, the degree of disability, and the effective date of any disability benefits. The Veteran must also be notified of what specific evidence he is to provide and what evidence VA will attempt to obtain. Third, VA has a duty to assist claimants in obtaining evidence needed to substantiate a claim. This includes obtaining all relevant evidence adequately identified in the record and, in some cases, affording VA examinations. 38 U.S.C.A. § 5103A. 

In Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006), the Court observed that a claim of entitlement to service connection consists of five elements, of which notice must be provided prior to the initial adjudication: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date. See 38 U.S.C. § 5103(a). 

The Board finds that a December 2011 letter provided the Veteran with notice that fulfills the provisions of 38 U.S.C.A. § 5103(a) including notice of the laws and regulations governing disability ratings and effective dates as required by the Court in Dingess. 

VA has also secured all available pertinent evidence and conducted all appropriate development. Specifically, the record shows that VA obtained and associated with the claims file all identified and available in-service and post-service records.

The RO also undertook all the requested development set forth in the April 2014 remand. 

Given the above actions, the Board finds that VA undertook all needed development in this appeal. Therefore, the Board finds that VA has no further duty to develop this part of the Veteran's claim. See Gobber v. Derwinski, 2 Vet. App. 470, 472 (1992) (the "'duty to assist' is not a license for a 'fishing expedition' to determine if there might be some unspecified information which could possibly support a claim . . . [and] this duty is limited to specifically identified documents that by their description would be facially relevant and material to the claim"). 

The Veteran was afforded a VA examination in June 2014 as part of the development requested in the April 2014 Board remand. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examination of record is adequate for rating purposes, because it was performed by a medical professional, was based on a thorough examination of the Veteran, and reported findings pertinent to the rating criteria. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008); see Barr v. Nicholson, 21 Vet. App. 303 (2007) (holding that VA must provide an examination that is adequate for rating purposes). Thus, the Board finds that a further examination is not necessary. 

The Veteran has been afforded a meaningful opportunity to participate effectively in the processing of the claim, including by submission of statements and arguments presented by his representative, and through testimony at his September 2013 hearing. For these reasons, it is not prejudicial to the appellant for the Board to proceed to finally decide the appeal. Based upon the foregoing, the duties to notify and assist the Veteran have been met, and no further action is necessary to assist the Veteran in substantiating this claim.


Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b). The claimed lung disorders are not "chronic diseases" listed under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) does not apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

If a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service-connected if the requirements of section 3.307(a)(6) are met even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of section 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). Section 3.307(d)(6) provides that the term "herbicide agent" means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. 38 C.F.R. § 3.307(d)(6)(i). Section 3.307(d)(6) also provides that a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(d)(6)(iii). Service in the Republic of Vietnam includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. Id. 

The diseases presumed to be associated with herbicide exposure include: chloracne or other acneform diseases consistent with chloracne, type 2 diabetes (also known as type II diabetes or adult-onset diabetes), Hodgkin's disease, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, early-onset peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e). For the purposes of § 3.307, the term herbicide agent means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the Vietnam era. 38 C.F.R. § 3.307(a)(6)(i). Agent Orange (AO) is generally considered an herbicide agent and will be so considered in this decision. 

The diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more any time after service, except that chloracne, porphyria cutanea tarda, and acute and subacute peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307(a)(6)(ii).

The Secretary, under the authority of the Agent Orange Act of 1991 and based on the studies by the NAS, has determined that there is no positive association between exposure to herbicides and any condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341-346 (1994); see also Notice, 61 Fed. Reg. 41,442-449, and 61 Fed. Reg. 57,586-589 (1996); Notice, 64 Fed. Reg. 59,232-243 (Nov. 2, 1999); Notice, 67 Fed. Reg. 42,600-08 (June 24, 2002); Notice, 72 Fed. Reg. 32,395-407 (June 12, 2007); Final Rule, 74 Fed. Reg. 21,258-260 (May 7, 2009); Final Rule, 75 Fed. Reg. 53,202-16 (Aug. 31, 2010). 

Notwithstanding the foregoing, a veteran may still establish service connection with proof of actual direct causation. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994); see also McCartt v. West, 12 Vet. App. 164, 167 (1999). "Of particular relevance to an analysis of medical evidence supporting such a nexus are factors such as whether a medical professional finds studies persuasive, whether there are other risk factors that might be the cause of the condition for which benefits are sought, and whether the condition has manifested itself in an unusual manner." Polovick v. Shinseki, 23 Vet. App. 48, 53 (2009). A statistical correlation between AO and a disease not on the presumptive list may not be the only basis for a positive nexus opinion, it may be part of the analysis, but the entirety of the analysis provided by the medical professional must be weighed and considered. Polovick, 23 Vet. App. at 53-54.

It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 3.102.

It is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C.A. § 7104(a) (West 2002). In this case, the Board has thoroughly reviewed all the evidence in the Veteran's claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

In evaluating the evidence in any given appeal, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006); Klekar v. West, 12 Vet. App. 503, 507 (1999); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

The Veteran maintains that his lung disorders either had their onset in service or from his exposure to AO while in Vietnam.

To the extent that the Veteran is claiming that his current lung disorders arose out of exposure to herbicides, none of the current lung disorders are on the presumptive disease list. As noted above, the Secretary of Veterans Affairs has determined that there is no positive association between AO exposure and any condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. Hence, presumptive service connection for any current lung disorder cannot be provided based upon the regulations governing presumptive exposure or on the basis of studies performed by the NAS on behalf of the Secretary with regard to AO exposure. 

The claimant may support with affirmative medical opinion evidence his claim for service connection for a lung disorder as due to AO exposure. In this regard, the Veteran has not submitted any medical opinion demonstrating that any lung disorder arose out of exposure to AO. In the absence of any competent evidence relating any current lung disorder to the herbicide exposure in service, service connection would not be warranted on this basis.

A review of the Veteran's service treatment records reveals that he was hospitalized in July 1967 for flu syndrome. The Veteran was treated and released. In December 1967, the Veteran was diagnosed as having an upper respiratory infection. There were no further complaints or findings of lung/breathing problems in service. At the time of the Veteran's June 1968 service separation examination, normal findings were reported for the lungs and chest. On his June 1968 service separation report of medical history, the Veteran checked the "no" boxes when asked if he had or had ever had chronic or frequent colds or shortness of breath. 

On his initial claim for compensation, received in October 1968, the Veteran did not report having lung or breathing problems. The Veteran did not request service connection for lung problems until May 2009. Treatment records associated with the claims folder reveal that the Veteran was seen in December 2008 for a cough productive of whitish sputum. A chest CT scan performed at that time revealed what was most likely IP/PF. 

At his September 2013 videoconference hearing, the Veteran testified that he was initially diagnosed with pulmonary problems in 1983. The Veteran indicated that these records were not available for review. The Veteran stated that it was his belief that his pulmonary problems were related to his AO exposure. The representative also indicated that there was medical literature linking AO use and other propellants to cardiopulmonary findings, but he did not provide any such medical literature. 

In conjunction with his claim, the Veteran was afforded a VA examination in June 2014. The examiner indicated that the Veteran's claims folder was available and had been reviewed as well as records in VBMS and CAPRI. The examiner diagnosed the Veteran as having non-specific interstitial pneumonia and pulmonary fibrosis. He indicated that the onset of these disorders was in 2008. The examiner noted that the Veteran had AO exposure and 35 pack-year cigarette use. Following examination, the examiner opined that the Veteran's lung conditions of nonspecific interstitial pneumonia and pulmonary fibrosis were less likely as not related to his period of military service, to include AO. He observed that there was no evidence based literature that he was aware of that stated that nonspecific interstitial pneumonia and pulmonary fibrosis were caused by or a result of exposure to AO. 

The weight of the evidence demonstrates that the earliest post-service treatment lung disorders did not occur until years after service. VA treatment and examination records have diagnosed the Veteran as currently having lung problems. As such, current disabilities of the lungs are acknowledged by VA as having been established in the record by competent evidence. 

The Veteran has himself asserted, within his written contentions, that he has experienced post-service lung problems since service. Such recent assertions, however, are inconsistent with, and outweighed by, other lay and medical evidence of record, including the June 1968 service separation examination report and service separation report of medical history, an absence of complaints, findings, or treatment for lung problems for many years after service, and the Veteran's own testimony that his pulmonary problems were initially diagnosed in 1983. Thus, to the extent that the Veteran is asserting that he had lung problems since service, the Board does not find the Veteran's more recent assertions of continuous lung problems since service to be credible. 

As the Board does not find the Veteran's lay statements made within the record regarding lung symptoms since service to be credible, they are afforded no probative weight. These statements are vague in detail, and are inconsistent with more contemporaneous medical records and the Veteran's own, more contemporaneous histories, including histories made for treatment purposes. See Kahana v. Shinseki, 24 Vet. App. 428, 440 (2011) (Lance, J., concurring) (silence in a medical record can be weighed against lay testimony if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the medical record being evaluated by the fact finder). 

The Board next finds that the weight of the evidence demonstrates that the Veteran's current lung disorders are not related to active service. The Veteran was afforded a VA medical examination, which included an opinion as to etiology, in June 2014. The claims file was reviewed in conjunction with this examination. Such review included the service treatment records. Upon reviewing the claims file, the examiner indicated that it was less likely than not that the Veteran's current lung disorders had their onset in service. As this opinion was rendered by a competent medical expert after physical evaluation of the Veteran and review of his claims file, including his service treatment records, it is considered highly probative by the Board. The Board notes that the Veteran's representative, at the time of the September 2013 hearing, indicated that there was available research to support the opinion that AO caused cardiopulmonary problems. However, neither the Veteran nor his representative has submitted such evidence in support of the claim. Moreover, treatise evidence must discuss generic relationships with a degree of certainty such that under the facts of this particular case there is at least a plausible causality based on objective facts rather than on unsubstantiated lay opinion. See, e.g., Wallin v. West, 11 Vet. App. 509, 514 (1998); Timberlake v. Gober, 14 Vet. App. 122, 130 (2000) (citing Hensley v. West, 212 F.3d 1255, 1265 (Fed. Cir. 2000)). In addition to not submitting any articles, the representative's arguments talked in general about a relationship between cardiopulmonary problems and exposure to AO and other propellants. His argument is of little probative value.

The Board finds the Veteran is not competent to report regarding the etiological basis of his current lung disorders. Lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). 

Some medical issues, however, require specialized training for a determination as to diagnosis and causation, and such issues are, therefore, not susceptible of lay opinions on etiology, and a veteran's statements therein cannot be accepted as competent medical evidence. See Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377 , n. 4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). Lay testimony is not competent in the present case, because the Veteran is not competent to state that any current lung disorders were incurred in service or are related to AO exposure. The diagnosis and etiology of the claimed lung disorders are complex medical questions and the Veteran is not shown to have the expertise to render such opinions in this case. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana, 24 Vet. App. at 433 , n. 4 (lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran's particular disability is the type of disability for which lay evidence is competent). 

For the foregoing reasons, the preponderance of the evidence is against the claim for service connection for any current lung disorder, to include nonspecific interstitial pneumonia or pulmonary fibrosis. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


ORDER

Service connection for a lung/respiratory disorder, to include PF and IP, is denied. 




REMAND

As it relates to the claim of a TDIU, the Board notes that the RO denied the Veteran's claim for a TDIU in July 2013. The Veteran filed a notice of disagreement with this denial in September 2013 and statement of the case was issued in July 2014. Thereafter, the Veteran filed a substantive appeal in August 2014. On the VA Form 9, the Veteran checked the box indicating that he desired a Travel Board hearing at the RO. 

To date, the Veteran has not been scheduled for the requested hearing. 

Accordingly, the case is REMANDED for the following action:

Schedule the Veteran for a Travel Board hearing at the Philadelphia RO before a Veterans Law Judge. A copy of the notice sent to the Veteran with regard to the hearing should be placed in the claims file.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



______________________________________________
K. J. Alibrando
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs